IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN M. DOTSON, | ) | CASE NO. 4:19CV1237 |
| | ) | |
| Petitioner, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| BRANDESHAWN HARRIS, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Bryan Dotson ("Petitioner" or "Dotson") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Dotson is detained at the Lorain Correctional Institution, having been found guilty by a Mahoning County, Ohio, Court of Common Pleas jury of one count each of receiving stolen property and tampering with vehicle identifying numbers.[1]  *State v. Dotson*, Case No. 15-CR-613 (Mahoning Cty. Common Pleas Ct., filed July 8, 2018).  The trial court sentenced Dotson to five years of community control and ordered him to serve six months on each count, consecutively, in prison.  Doc. 9-1, p. 47.  On appeal, his receiving stolen property conviction was reversed, his attendant sentence was vacated, and that charge was subsequently dismissed.  Doc. 9-1, pp. 163, 177.

On May 22, 2019, Dotson, pro se, filed his Petition for Writ of Habeas Corpus setting forth two grounds for relief.  Doc. 1, pp. 5-7.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Ground One is procedurally defaulted and Ground Two is not cognizable. Thus, the undersigned recommends that Dotson's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED**.

---

[1] It appears that Dotson is currently incarcerated on another case.  See Doc. 9-1, p. 292.

1

# I. Factual and Procedural Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The following summary of underlying facts is taken from the opinion of the Mahoning County Court of Appeals, Seventh Appellate District of Ohio:

> {¶ 2} On May 22, 2014, Ohio State Highway Patrol Trooper Erik Golias initiated a traffic stop of appellant on State Route 46 in Mahoning County, Ohio. Trooper Golias initiated the traffic stop due to appellant's truck not displaying a front-end license plate. Appellant was operating a Dodge Ram pickup truck.
>
> {¶ 3} Upon approaching appellant's vehicle, Trooper Golias noticed that the truck's steering column had been "peeled," meaning that the plastic around the ignition had been pulled away from the steering column to access the ignition mechanisms. He was then under the suspicion that the truck appellant was operating may have been stolen or tampered with. Upon noticing the peeled steering column, he removed appellant from the truck, conducted a consensual pat-down, and placed appellant in his police cruiser. Trooper Golias then attempted to identify the public vehicle identification number (VIN), which is located on the dashboard, but was unable to do so because there was black spray paint on the windshield which covered the VIN. Trooper Golias also discovered a secondary VIN on the truck inside the door frame that was also covered with black spray paint. Eventually, Trooper Golias was able to scrape away enough of the spray paint on the windshield to ascertain the public VIN. The public VIN indicated that the truck belonged to appellant.
>
> {¶ 4} There were several other factors that le[]d to Trooper Golias' suspicion that the truck appellant was operating was stolen, which le[]d to a continued search. These factors included: a cracked dashboard, missing screws from the dashboard, appellant's apparent level of nervousness, appellant's overtalkative nature, and appellant's explanation that he changed out the dashboard but the newly installed dashboard was damaged. Appellant attempted to explain that he purchased the truck inexpensively and had replaced many components including the interior and the windshield. Trooper Golias contacted Trooper Skaggs, who was a specialist in stolen vehicles, to assist with the investigation.
>
> {¶ 5} Upon Trooper Skaggs' arrival at the scene, he began to investigate the truck. First, he noted that an anonymous tip was reported stating that there was a Dodge Ram pickup truck matching the description of the truck appellant was operating that was possibly a retagged vehicle. Trooper Skaggs also noted that: the door markings identified the truck as a Dodge 1500 series but the chassis was a Dodge 2500 series; the dashboard itself was

a different color than the rest of the interior of the truck; and the truck's engine was missing its body tag. Furthermore, Trooper Skaggs noticed that the truck's VIN indicated that the truck contained a 5.9 liter gas engine but the truck had a 5.9 liter turbo Cummins intercooled diesel engine.

{¶ 6} At the conclusion of Trooper Skaggs' inspection, Troopers Golias and Skaggs impounded appellant's truck in order to perform a more thorough investigation. But they decided not to arrest appellant at that time. They gave appellant the option of transporting the truck to the highway patrol post himself or having the troopers call for a tow truck. Appellant opted to drive the truck to the highway patrol post himself. Appellant was then free to leave after he left the truck in the troopers' possession.

{¶ 7} The next day, Trooper Skaggs continued his investigation of the vehicle. He located the secondary concealed VIN on the truck. The secondary VIN did not match the public VIN located on the dashboard. When he ran the secondary VIN through the National Insurance Crime Bureau (NICB) and the National Crime Information Center (NCIC) databases, he discovered that the secondary VIN was for a Dodge 2500 series truck reported as stolen from Cornerstone Motors (Cornerstone) in Columbiana, Ohio. Trooper Skaggs also followed up with the public VIN on the dashboard and discovered the original owner, Amanda Varney. Varney told him that she had sold appellant a maroon Dodge Ram 1500.

{¶ 8} Trooper Skaggs also noted that the truck registered as stolen indicated it had approximately 141,000 miles on it. Appellant's odometer at the time he was stopped by Trooper Golias read 145,213 miles. But the title of the vehicle when Varney sold the truck to appellant indicated that the truck she sold had almost 250,000 miles on it. Trooper Skaggs then concluded that the VIN of the vehicle appellant purchased from Varney was placed on the stolen vehicle from Cornerstone in order to conceal the fact that it was stolen.

{¶ 9} Appellant was then charged and indicted with one count of receiving stolen property in the form of a vehicle, a fourth-degree felony in violation of R.C. 2913.51(A), and one count of tampering with vehicle identifying numbers, a fifth-degree felony in violation of R.C. 4549.62(A).

{¶ 10} Appellant filed a motion to suppress seeking to exclude virtually all evidence police obtained in this case. In his supporting memorandum, appellant argued that all evidence should be suppressed due to: a lack of reasonable suspicion to conduct a traffic stop, a lack of reasonable suspicion to continue appellant's detention and the investigation of the truck, and any and all statements made by appellant were obtained prior to appellant being read his Miranda rights. At the suppression hearing, Trooper Golias testified that a video tape of appellant's stop and detention existed. But the video had not been produced because it was erased by the Ohio State Highway Patrol.

{¶ 11} After the suppression hearing, the trial court gave appellant leave to file a motion addressing the missing tape. Appellant filed a motion to dismiss on the basis that the erased video tape contained potentially exculpatory evidence and should have been

preserved and disclosed by the prosecution. Appellant requested a hearing with the trial court on his motion to dismiss. The trial court overruled both appellant's motion to suppress and motion to dismiss without further hearing.

{¶ 12} The matter proceeded to a jury trial. Troopers Golias and Skaggs were the only witnesses. The jury returned guilty verdicts on both counts. The trial court subsequently sentenced appellant to five years of community control, which included six months of incarceration on each count to be served consecutively for a total jail sentence of one year. The court also ordered appellant to pay restitution of $1,000 to Cornerstone and $10,713.38 to Auto Owner's Insurance, Cornerstone's insurance company.

*State v. Dotson*, 114 N.E.3d 390, 397-398 (Oh. Ct. App. 2018).

### A. State Trial Court Proceedings

In July 2015, a Mahoning County Grand Jury indicted Dotson on one count of receiving stolen property and one count of tampering with vehicle identifying numbers. Doc. 9-1, p. 5. Dotson, through counsel, entered a plea of not guilty to both counts. Doc. 9-1, p. 7.

On November 16, 2015, Dotson, through counsel, filed a motion to suppress evidence and statements made to police. Doc. 9-1, p. 8. The trial court held a hearing on the matter and denied Dotson's motion. Doc. 9-1, p. 22.

On February 12, 2016, Dotson, through counsel, filed a motion to dismiss the indictment based on the state's failure to preserve exculpatory evidence that would have acquitted him, to wit: the video tape of the police stop of Dotson. Doc. 9-1, pp. 23-25. The trial court denied his motion. Doc. 9-1, p. 33. The state filed a motion to amend the indictment to correct a typographical error (the year of the vehicle "197" should read "1997"), which the court granted. Doc. 9-1, pp. 34, 36.

After a jury trial, Dotson was found guilty as charged in the indictment. Doc. 9-1, p. 37. Dotson, through counsel, filed a motion for a new trial and a motion for acquittal pursuant to Ohio Criminal Rule 29, both motions regarding the receipt of stolen property conviction, which the trial court denied. Doc. 9-1, pp. 39, 42, 46. On July 6, 2016, Dotson was ordered to serve

five years of community control, and six months in prison on each count, to be served consecutively, for a total prison sentence of one year. Doc. 9-1, p. 47.

### B. Direct Appeal

Dotson, through counsel, appealed to the Seventh District Court of Appeals, Mahoning County, Ohio. Doc. 9-1, p. 49. In his brief, through new counsel, he set forth the following assignments of error:

> 1. The trial court erred in failing to suppress all evidence, including observations and conclusions, from the unconstitutional stop, seizure, and search of Appellant and his vehicle.
>
> 2. The trial court erred in admitting hearsay testimony and documents, as well as opinion testimony by an officer, for which no exception existed under the rules of evidence.
>
> 3. The trial court violated Appellant's rights under the confrontation clause by allowing prejudicial hearsay statements to overwhelm Appellant's trial.
>
> 4. Insufficient evidence supported Appellant's convictions.
>
> 5. The manifest weight of the evidence did not support Appellant's convictions.
>
> 6. Defense counsel provided constitutionally ineffective assistance by failure to object to obvious, inadmissible hearsay evidence.
>
> 7. The trial court erred by denying Appellant's motion to dismiss without a hearing on the explanation for missing dashcam video.
>
> 8. The State committed prosecutorial misconduct by deliberately admitting inadmissible hearsay evidence to the jury only to withdraw that evidence once inadmissible hearsay testimony had been elicited regarding the same.
>
> 9. The trial court acted contrary to law in sentencing appellant to consecutive jail terms as part of a community control sanction.
>
> 10. The trial court erred in issuing a restitution order not authorized by law.

Doc. 9-1, pp. 53-54. On June 26, 2018, the Ohio Court of Appeals affirmed the conviction for tampering with vehicle identifying numbers, reversed and vacated the conviction for receiving stolen property, and remanded to the trial court. Doc. 9-1, pp. 150-174.

5

On remand, the state filed a motion to dismiss the receiving stolen property count of the indictment, which the trial court granted, dismissing that count.  Doc. 9-1, pp. 175, 177.

Dotson, pro se, appealed the Ohio Court of Appeals' decision to the Ohio Supreme Court.  Doc. 9-1, pp. 178-179.  In his memorandum in support of jurisdiction, he asserted the following propositions of law:

> I. The trial court erred to Appellant's prejudice when he was convicted for an offense without sufficient evidence as required under the Ohio and U.S. Constitutions as defined in *State v. Thompkins*, 78 Ohio St. 3d 380, *Jackson v. Virginia* (1979), 443 U.S. 307 and *In re Winship*, 397 U.S. 358.
>
> II. The trial court erred when it did not find that Appellant was illegally stopped without probable cause and an illegal search and seizure was made of his vehicle in violation of his Fourth Amendment Rights.

Doc. 9-1, p. 181.  On September 26, 2018, the Ohio Supreme declined to accept jurisdiction of the appeal pursuant to S.C.Prac.R. 7.08(B)(4).  Doc. 9-1, p. 218.

### C. App. Rule 26(B) Application to Reopen

On September 7, 2018, Dotson, pro se, filed an application to reopen his appeal pursuant to App. R. 26(B).  Doc. 9-1, p. 218.  He alleged that he received ineffective assistance of appellate counsel and raised the following reasons that counsel was ineffective:

> 1. Appellate counsel failed to effectively argue that the officer lacked probable cause for the stop of Appellant's vehicle.
>
> 2. Appellate counsel failed to effectively argue the VIN that was supposedly related to a stolen vehicle was not factually valid and that trial counsel was ineffective.
>
> 3. Appellate counsel was ineffective for failing to effectively argue that Appellant did not purposely conceal the VIN numbers in his vehicle.
>
> 4. Appellate counsel failed to effectively argue the issue of the dashcam video of the officer who made the initial stop.

Doc. 9-1, pp. 220-225.  On October 31, 2018, the Ohio Court of Appeals denied Dotson's application to reopen his appeal.  Doc. 9-1, pp. 242-251.  Dotson did not appeal to the Ohio

Supreme Court.

### D. Federal Habeas Petition

On May 22, 2019, Dotson, pro se, filed a Petition for a Writ of Habeas Corpus. Doc. 1. He listed the following grounds for relief:

> **Ground One**: The trial court erred to Appellant's prejudice when he was convicted of an offense without sufficient evidence as required under [] Ohio and U.S. Constitutions as defined in *Jackson v. Virginia* (1979), 443 U.S. 307 and *In re Winship*, 397 U.S. 358.
>
> **Supporting facts:** Petitioner was convicted of altering a vehicle identification number (VIN) overspray from a bad paint job on a work truck (the truck was sprayed with cans of spray paint) was found on the body tags containing the VIN. The VINs were able to be read and were called in for verification with the National Insurance Crime Bureau at the scene. The VIN on the dashboard was not covered at all, with the exception of a small amount of overspray on the windshield, which also was able to be read at the scene. There was no purposeful intent to conceal the VINs, which were readable at the stop. The VINs showed that the vehicle was registered to Petitioner.
>
> **Ground Two**: The trial court erred when it did not find that Appellant was illegally stopped without probable cause and an illegal search and seizure was made of his vehicle in violation of his Fourth Amendment rights.
>
> **Supporting facts:** Petitioner was stopped for a claimed absence of a front license plate in violation of the law. The Petitioner's vehicle clearly displayed a license plate on both the front windshield and the rear bumper of the vehicle. There was, therefore, no reasonable and articulable suspicion of criminal activity to justify the stop. The state court did not provide Petitioner a full and fair adjudication of the issue as required due to its failure to properly apply the applicable law and constitutional standards.

Doc. 1, pp. 5-7. On October 29, 2019, Respondent filed a Return of Writ, asserting that Ground One is procedurally defaulted and Ground Two is not cognizable. Doc. 9. Dotson did not file a Traverse and the time within which to do so has passed.

### II. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and

7

exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts")). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.** Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*. In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

### III. Analysis

**A. Ground One is procedurally defaulted.**

In Ground One, Dotson argues that there was insufficient evidence to support his conviction. Doc. 1, p. 5. Ground One is procedurally defaulted because Dotson did not raise this issue in his brief to the Ohio Court of Appeals, as he must do. *See Williams*, 460 F.3d at 806 (a petitioner may procedurally default a claim by failing to pursue a claim through the state's "ordinary appellate review procedures." citing *O'Sullivan*, 526 U.S. at 848); *Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015) (a petitioner must fairly present his claim to the Ohio Court of Appeals and the Ohio Supreme Court). To "fairly present" a claim, a petitioner must present both the legal and factual basis for the claim. *Id*. Here, although Dotson raised a sufficiency of the evidence claim to the Ohio Court of Appeals, he argued that he told the officers that he had spray painted the truck to make it look better, and that this reason didn't show purpose or intent to conceal the VIN with spray paint. Doc. 9-1, p. 80. But in his brief to the Ohio Supreme Court, and in his Petition, Dotson's sufficiency of the evidence claim is based on his assertion that the VINs were not, in fact, concealed by spray paint. Doc. 9-1, pp. 187-188 (brief to the Ohio Supreme Court); Doc. 1, p. 5 (Petition). Because Dotson did not raise this claim to the Ohio Court of Appeals, i.e., through Ohio's ordinary appellate review procedure, it is procedurally defaulted.

Dotson does not allege cause to overcome his procedural default. Ineffective assistance of appellate counsel cannot serve as cause because, although Dotson raised counsel's failure to argue this claim on appeal in his Rule 26(B) Application, his Rule 26(B) Application was denied

10

and he did not appeal this ruling to the Ohio Supreme Court. Thus, Dotson procedurally defaulted any ineffective assistance of counsel claim that could serve as cause to excuse the procedural default of Ground One. *Edwards v. Carpenter*, 529 U.S. 446 450-451 (2000) (when a petitioner procedurally defaults an ineffective assistance of counsel claim, ineffective assistance of counsel cannot serve as cause to excuse the procedural default of the underlying claim unless the petitioner can show cause and prejudice to excuse the ineffective assistance of counsel procedural default). Dotson does not show cause and prejudice to excuse the procedural default of his ineffective assistance of counsel claim.

Finally, Dotson does not show a fundamental miscarriage of justice if his claim is not considered. *Coleman*, 501 U.S. at 750. To do so he must show that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). Dotson has not identified any such evidence. Ground One is procedurally defaulted.

### B. Ground Two is not cognizable

In Ground Two, Dotson argues that the trial court erred when it found that the police stop did not violate his Fourth Amendment rights. Doc. 1, p. 6. He alleges that he was stopped due to not having a front license plate but asserts that he had a license plate on the front windshield. Doc. 1, p. 7. Therefore, he submits, the police had "no reasonable and articulable suspicion of criminal activity to justify the stop." Doc. 1, p. 7. He also contends that the trial court did not provide him a full and fair adjudication of this issue. Doc. 1, p. 7.

In *Stone v. Powell*, the United States Supreme Court held, "where the State has provided

11

an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976). In order for the rule of *Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim and the presentation of that claim must not have been frustrated by failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). "[T]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013), *cert. denied*, 135 S.Ct. 1174 (2015). Instead, when considering whether a petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, the court "asks a more basic and readily administrable question: Did the state courts permit the defendant to raise the claim or not?" *Id.* at 640.

Ohio has a mechanism in place for resolving Fourth Amendment claims; it provides a defendant the opportunity to file a pretrial motion to suppress and the opportunity to take a direct appeal from the denial of the motion to suppress. *See Riley*, 674 F.2d at 526 (finding that Ohio criminal and appellate rules provide adequate procedural mechanisms for litigation of Fourth Amendment claims). Dotson availed himself of that mechanism; he filed a motion to suppress in the state trial court, had a hearing, and appealed the trial court's denial of his motion to suppress on direct appeal. *Id.* Therefore, Ground Two is not cognizable.[2] *Powell*, 428 U.S. at 494.

---

[2] Additionally, Dotson's claim that his initial stop was improper is procedurally defaulted because, as with Ground One, he did not present this claim to the Ohio Court of Appeals. In his brief to the Ohio Court of Appeals, Dotson only argued that his arrest was improper, not that the initial stop of his vehicle for failing to display a front license plate was improper. Doc. 9-1, pp. 65-67. Moreover, the undersigned notes that Dotson was pulled over for a violation of R.C. 4503.21. *Dotson*, 114 N.E.3d at 399. R.C. 4503.21 has been interpreted to require a front license plate be displayed on the exterior of the vehicle, not behind the front windshield. See Doc. 9-1, p. 189 (Dotson's brief to the Ohio Supreme Court stating that his license plate was displayed behind the front windshield); *State v. Fredo*, 2012 WL 1116189, at *4-5 (Oh. Ct. App. 7th Dist., March 30, 2012) (holding that R.C. 4503.21 requires a

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Dotson's Habeas Petition be **DISMISSED**.

Dated: January 29, 2020

*/s/ Kathleen B. Burke*

Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

license plate be displayed on the exterior of the vehicle, citing *State v. Phillips*, 799 N.E.2d 653 (Oh. Ct. App. 2003)).